**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LESLIE GORDON, No. 322032,

       Petitioner,

                                  CASE NO. 2:09-CV-13957

v.                                  HONORABLE STEPHEN J. MURPHY, III

MILLICENT WARREN, Warden,

       Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR
WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE
OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Leslie Gordon, a state inmate, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Gordon challenges her Wayne Circuit Court convictions of four counts of first-degree murder; two counts of assault with the intent to commit murder; and two counts of assault with intent to rob while armed. As a result of her convictions, Petitioner is serving concurrent sentences of life without parole for the murders, eighteen-to-eighty years' imprisonment for the assault with intent to commit murder convictions, and seventeen-to-eighty years' imprisonment for the assault with intent to rob convictions.

Gordon's petition raises twelve claims: (1) she was denied due process because her convictions were negated by the weight of her duress defense, (2) the jury was not instructed to acquit Gordon if they found that her accomplice's actions were unanticipated and went beyond the criminal enterprise, (3) she was denied her right to due process when

1

other acts evidence was introduced, (4) Gordon was denied the effective assistance of counsel, (5) she was denied her right to confront her accusers, (6) the prosecutor charged Gordon under a "multiplicious" criminal information, (7) Gordon was convicted of a crime with which she was not charged, (8) the prosecutor committed multiple acts of misconduct, (9) Gordon was denied her right to a correctly instructed jury, (10) she was denied the effective assistance of appellate counsel, (11) the prosecutor withheld exculpatory evidence, and (12) the trial judge was not impartial.  The Court will deny Gordon's habeas petition. The state court adjudication of her first three claims was not contrary to clearly established Supreme Court law, nor did it involve an unreasonable application of law or facts.  Gordon's remaining claims are barred from review because when the state court denied relief with respect to these claims, it relied on adequate and independent state procedural rules.  The Court also declines to issue a certificate of appealability and leave to proceed on appeal in forma pauperis.

## BACKGROUND

Gordon's convictions result from her participation in a crime spree that resulted in the shooting of six people, four of whom died.

On the morning of September 11, 2003, Michael Scofield and Gordon entered the Food and Wine Bazaar in Novi, Michigan.  Gordon was carrying a bag and handed it to Scofield.  She then approached the clerk, Raad Dawood, and asked to purchase a lottery ticket.  When Dawood looked up, Scofield was holding a handgun to his face.  Gordon went to the front door to stand watch.  Dawood was then led at gunpoint by Scofield to the store's cooler, where he was bound with plastic ties.  Several hundred dollars and other

2

items were taken from the store.[1]

About ten hours later, Gordon and Scofield arrived well-dressed and in a Corvette at Neil's Party Store, in Westland, Michigan.  Conrad Hasper and Feras Yousif were working at the store.  Hasper was standing at the counter when Scofield and Gordon entered.  Gordon approached him and asked to purchase a lottery ticket.  Hasper was checking the lottery ticket when he heard a loud bang and everything turned black.  He had been shot in the face and fell to the floor.  Hasper looked up and saw Yousif standing with his hands clasped together as though he was begging or praying.  Hasper then heard another shot.  Gordon went to the front door and locked it.

Two customers, Fuad Abuali and Jimmy Kuebler, approached to enter the store. Gordon told Scofield that two men were coming, and he told her to let them in. Gordon unlocked the door and told the two men that she was with a new security company. Scofield then emerged from an aisle and shot Kuebler in the head and Abuali in the neck. Kuebler died on the spot, and Abuali stayed on the ground and played dead.  Abulai could see Kuebler bleeding from the mouth.  He heard Scofield and Gordon singing and talking, and then he heard Gordon tell Scofield that two more people were coming.

Scofield took off his gloves and gave them to Gordon and told her to wipe off the door.  Scofield tried, but could not open the cash register and then said "let's go."  Gordon wiped the fingerprints off of the door and followed Scofield out of the store.  Abuali then

---

[1]As a result of this episode, Gordon was tried and convicted of armed robbery in Oakland Circuit Court and was sentenced to twenty-to-fifty years in prison.  That conviction is not the subject of this case, and Gordon's habeas action challenging its validity has already been rejected.  *See Gordon v. Davis*, Sixth Circuit No. 07-1212 (April 16, 2008).

saw Scofield shoot two men who had pulled-up to the store in a pickup truck.

Kenneth Bowles, who lived in the neighborhood, was walking towards the store when he heard three pops. When he arrived, he saw Gordon wiping the bottom of the door. He also noticed Hondo Littlefield's truck in the parking lot with a white Corvette. He walked towards the truck and saw Hondo slouched over and a lot of blood coming out of his mouth. Bowles looked up and saw Scofield standing next to the passenger side of the Corvette holding a gun down by his side. Bowles took off running to a nearby gas station and called 9-1-1.

A video recording of the entire episode was caught on the store's security camera, complete with audio, and it was played for the jury at Gordon's trial.

Sergeant Scott Murray was alerted to the scene by a radio call. He saw a pickup truck containing two men who had been shot in the head. He entered the store and saw bodies laying on the floor, one of whom, Conrad Hasper, was still moving. He found Frank Yousif in the cooler, deceased. Another victim, Jimmy Kuebler, was lying approximately five feet inside the front door, face down in a pool of blood. In all, four people had been killed and two others had been injured.

Officer Scott Linton spotted the white Corvette traveling northbound on Haggerty Road. A police chase developed during which the Corvette spun out of control on the Southfield Freeway, collided with another vehicle, hit a wall, and then stopped. Scofield ran up an exit ramp, and Gordon opened the passenger door and followed him. The chase continued on foot. State Police Trooper Jack Taeff caught up to the pair when Scofield suddenly shot himself. Gordon surrendered to police. A search of the Corvette revealed that Gordon's bag contained two pairs of gloves, a butterfly knife and black zip ties.

4

After being convicted of the above-described offenses and sentenced, Gordon filed an appeal of right. Her appellate brief raised the following claims:

I. Defendant was deprived of her Fifth and Fourteenth Amendment rights of due process when she was convicted of the crime of aiding and abetting although the same had been negated by the weight of her duress defense.

II. Defendant was denied her Fifth and Fourteenth Amendment rights of due process and her Sixth Amendment right to a fair trial because of the failure of the trial judge to instruct on unanticipated consequences.

III. Defendant was deprived of her Fifth and Fourteenth Amendment rights of due process when evidence of prior, uncharged crimes was introduced.

The Court of Appeals affirmed Gordon's conviction in an unpublished opinion. *People v. Gordon*, 2005 Mich. App. LEXIS 2282 (Mich. Ct. App. Sept. 22, 2005). Gordon subsequently filed an application for leave to appeal, raising the same issues. The Michigan Supreme Court denied the application in a standard order. *People v. Gordon*, 474 Mich. 1070 (2006).

On March 1, 2007, Gordon filed a petition for a writ of habeas corpus in this Court that was dismissed without prejudice on her motion on April 23, 2007. See *Gordon v. Davis*, Eastern District of Michigan No. 2:07-cv-10899.

On May 23, 2007, Gordon returned to the trial court and filed a motion for relief from judgment, raising the following issues:

I. The defendant was denied her right to effective assistance of counsel, which deprived her of due process and a fair trial.

II. The defendant was denied her right to confrontation which deprived her of a fair trial and due process.

III. The prosecutor abused her discretion in charging the defendant under a multiplicous (sic) information which deprived the defendant a fair trial and due process.

5

IV. The defendant was denied her right to be free from conviction of a crime with which she was not charged, which deprived her of a fair trial and due process of law.

V. The defendant was denied a fair trial and due process based on multiple instances of prosecutor misconduct.

VI. The defendant was denied her right to a properly instructed jury, fair trial and due process causing the guilty verdicts to be unreliable.

VII. The defendant was denied her right to the effective assistance of appellate counse, which consequently denied this defendant due process and her right to appeal.

VIII. The defendant was denied her right to a fair trial by the prosecutor withholding evidence.

IX.  The trial judge was not impartial, denying defendant due process and a fair trial.

The trial court denied the motion by opinion dated July 12, 2007, rejecting the claims because Gordon had failed to demonstrate "good cause" and "actual prejudice" for failing to raise the claims during her direct appeal under Michigan Court Rule 6.508(D)(3). The opinion also rejected the claims on the merits in the alternative.

Gordon filed a delayed application for leave to appeal in the Michigan Court of Appeals. The application was denied "because Defendant failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D)." *People v. Gordon*, No. 286517 (Mich. Ct. App. January 14, 2009).  Gordon applied for leave to appeal this decision in the Michigan Supreme Court. That Court ordered the circuit court to amend the judgment of sentence, but it otherwise denied Gordon's application for leave to appeal under the same court rule.   *People v. Gordon*, 485 Mich. 886 (2009).

Gordon then filed the instant action, raising the three claims she raised in the state courts during her direct appeal.  Subsequently, Gordon filed a motion for leave to file a

6

supplemental habeas petition to add the claims she presented to the state courts in her

post-conviction proceeding. ECF No. 9. The Court granted Gordon's motion to supplement

the habeas petition, directing Gordon to supplement the petition within forty-five days. ECF

No. 18. Gordon did not file anything within that time period, but she had appended her

additional claims to her motion for leave to supplement. The Court reviewed the claims as

appended to reach the instant decision.

## STANDARD OF REVIEW

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect
to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set

of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540

U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application'

prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court

7

identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786, (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

8

Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is generally "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

## DISCUSSION

Gordon raises twelve claims in her petition. The first three claims were adjudicated on the merits by the state court during Petitioner's direct appeal, and are a proper subject of habeas review. Gordon's remaining claims were raised on post-conviction review in the state courts and were denied by the trial court on procedural grounds. These claims, because they were denied by the state court on adequate and independent state grounds, and Gordon has not shown "cause" or "prejudice" for the default below, are barred from review in this action. The Court will first address the three claims that were adjudicated on the merits, and then will address the claims denied pursuant to the Court's procedural rule.

## I. Sufficiency of the Evidence

Gordon first claims that the prosecution's evidence that she was guilty under an

9

aiding and abetting theory was negated by the evidence that she acted under duress. Respondent correctly notes that this claim was not presented to the state courts on federal constitutional grounds.

In Gordon's direct appeal, instead of arguing that insufficient evidence was offered to sustain her convictions under the Due Process Clause, she asserted that she was entitled to a new trial because the verdict was against the "great weight of the evidence." Because her great-weight-of-the-evidence claim is a question of state law, this Court has no power to review it. *See Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002) ("A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence."); s*ee also Cukaj v. Warren*, 305 F.Supp.2d 789, 796 (E.D. Mich. 2004) (same).

In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). This authority is conferred by statute and court rule. *Id.* at 634 (citing MICH. COMP. LAWS § 770.1 and MICH. CT. R. 6.431(B)). The Michigan Supreme Court has noted that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8. Therefore, because Gordon challenges the Michigan Court of Appeals' construction or application of state law in her first claim, she is not entitled to relief. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law"); *Mullaney v. Wilbur*, 421 U.S. 684, 691(1975) (state courts are the final arbiters of state law). It is well-settled that "a state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is thus not warranted on such a basis.

Even assuming that Gordon could present a cognizable sufficiency-of-the-evidence claim, she still has not demonstrated entitlement to habeas relief. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume —even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 130 S. Ct. 665, 674 (2010) (quoting *Jackson*, 443 U.S. at 326).

Viewed most favorably to the prosecution, the evidence presented at Gordon's trial was constitutionally sufficient to allow the jury to reject her duress offense. Under Michigan

11

law, the defense of duress requires the prosecution to disprove beyond a reasonable doubt that: (1) the threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant, (3) the fear or duress was operating on the mind of the defendant at the time of the alleged act, and (4) the defendant committed the act to avoid the threatened harm. *People v. McKinney*, 258 Mich. App. 157, 164 (2003).[2]

Gordon testified that she acted out of fear that Scofield would kill her if she did not participate in his crime spree.  But there was strong evidence to support the jury's rejection of that defense.  The evidence showed that Gordon had opportunities to escape if she truly feared for her life.  After the first shooting, Gordon was positioned at the door.  Rather than run away, she locked the door, stood inside, and allowed other customers inside.  As described by the prosecutor during closing arguments, the audio feed from the surveillance tape revealed that the victims of the crime were screaming and pleading for their lives whereas Gordon calmly talked with Scofield as they worked together to ambush the second set of victims.   Two witnesses testified that they heard Gordon singing with Scofield at some points during the crime.  Furthermore, there was evidence presented that Gordon handed Scofield the gun when it fell to the floor of their car during the police chase.  After the Corvette crashed and Scofield ran away, Gordon did not stay  in the car and wait for

---

[2]  It must be noted that under Michigan law, duress is not a valid defense to murder. *See People v Gimotty*, 216 Mich App 254, 257 (1996).  Therefore, by instructing the jury to find Gordon not guilty of the charged offenses if she acted under duress, see T 2/12/2004, at 186-188, it appears that the trial court gave Gordon the opportunity to receive an unjust windfall were she acquitted on that basis.

the police to help her, but rather, she ran after Scofield. After Scofield shot himself, the arresting officer testified that Gordon did not appear relieved. Viewed most favorably to the prosecution, a rational juror might find beyond a reasonable doubt that Gordon's actions and demeanor during the crime belied her claim that she acted under duress. Gordon's first claims is therefore without merit.

II. <u>Jury Instructions</u>

Gordon next claims that she was denied a fair trial by the trial court's failure to instruct the jury to acquit her if it found that Scofield's actions were unexpected or exceeded the scope of the criminal enterprise. Respondent asserts that review of the claim is barred because Gordon's trial attorney expressed satisfaction with the jury instructions as read.

"The extent to which [this claim is] procedurally defaulted is a nettlesome question; the extent to which [it is] meritless, much less so." *Benton v. Booker*, 403 F. App'x 984, 985 (6th Cir. 2010). The Court will therefore proceed to the merits of the claim.

The Supreme Court has held that erroneous jury instructions in a state criminal trial are generally not reviewable in a habeas corpus proceeding unless the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Habeas review of state jury instructions is very narrow because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Gordon speculates that without the requested instruction the jury might have convicted her even if it found she did not anticipate Scofield's decision to start shooting. The jury instructions, however, addressed that possibility. The trial court instructed the jury that to find Gordon guilty of first-degree premeditated murder, among other things, it must

find that "defendant intended to kill Mr. Yousif, Mr. Kuebler, Mr. Littlefield, and Mr. Gaddis." T 2/12/2004, at 173-174. Likewise, the trial court instructed the jury that to find Gordon guilty of first-degree felony murder, among other things, it must find that "defendant had one of these three states of mind. That she intended to kill. Or she intended to do great bodily harm to the decedents. Or that she knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of her actions." Id., at 176. The jury was similarly instructed that Gordon must possess the required mental states for the lesser crimes she was charged with. As for the aiding and abetting instruction, the jury was instructed that to find Gordon guilty under that theory, among other things, "the defendant must have intended the commission of the alleged crime or must have known that the other person intended its commission at the time of giving the assistance." Id., at 186. If, as Gordon speculates, the jury believed that Scofield's actions in the store were not anticipated by Gordon, then the jury could not have found the above-quoted elements to be present. Accordingly, the failure of the trial court to specifically instruct the jury regarding unanticipated actions by Scofield did not deny Gordon's right to a fair trial.

III. Other Acts Evidence

Gordon asserts in her third claim that the trial court erred in allowing the prosecutor to introduce evidence regarding the Novi robbery. The Michigan Court of Appeals found that the evidence was properly admitted under Michigan Rules of Evidence 404(b) as proof of a common scheme or plan and to show intent.

Gordon has not presented, and this Court has not found, any Supreme Court precedent holding that a state court violates due process when it properly admits evidence

14

—

of a criminal defendant's other bad acts.   Michigan appellate courts review the trial court's admission of prior acts evidence under Michigan Rule of Evidence 404(b) for an abuse of discretion. *See People v. Lukity*, 460 Mich. 484, 488 (1999).   As the Supreme Court explained, "[t]his type of general standard triggers another consideration under AEDPA. When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 130 S.Ct. at 1864 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   Consequently, state courts have greater leeway to make mistakes that are insulated from habeas review, as in *Lett*.   The *Lett* Court declared that "the more general the rule . . . the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Id.* (concluding that "the Michigan Supreme Court's decision upholding the trial judge's exercise of discretion — while not necessarily correct — was not objectively unreasonable") (internal quotation marks and alterations omitted).

Moreover, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also* FED. R. EVID. 413 and 414 (allowing such evidence in federal criminal trials).   As there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1), Gordon's third claim does not entitle her to habeas relief.

IV.   Claims Raised on State Post-Conviction Review

In its supplemental answer, Respondent contends that Gordon's remaining claims, numbers four through twelve, are procedurally defaulted because Gordon raised these

15

claims for the first time in her post-conviction motion, and she failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3). Rule 6.508(D)(3) provides that a court may not grant relief to a defendant, if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A habeas court must look to the last reasoned state court decision to determine wether the state court adjudication rests on state law. *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected the petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Gordon's failure to raise these claims on his direct appeal as their rationale for rejecting her claim. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to

16

whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained." *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Gordon's claims. *Id.*

The trial court, in denying the motion for relief from judgment, appeared to reject each of Gordon's claims both on the merits and because she failed to demonstrate good cause under Rule 6.508(D)(3). At the end of its opinion, that trial court explicitly stated, "Defendant has not shown 'good cause' under Rule 6.508(D)(3) as to why the issues presented in the motion were not previously raised on appeal." *People v. Gordon*, No. 03-11072-01, * 7 (Wayne Circuit Court, July 12, 2007). The fact that the trial court rejected the claims on the merits in the alternative does not affect the imposition of a procedural bar. There is no absolute rule waiving review when state courts look at the merits of a petitioner's claim in order to determine whether to excuse a procedural default. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (concluding that the state does not waive procedural default when the state court relies on a procedural rule as an alternative grounds for decision); *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989) (holding that procedural default is not waived by the state when a state court attempts to "enforce the procedural bar while reserving the right to excuse it").

Pursuant to *Ylst*, this Court must presume that the unexplained orders of the Michigan appellate courts rejected Gordon's post-conviction claims on the same ground that the state trial court did in rejecting the claims. Under the circumstances, the Michigan courts clearly invoked the provisions of Rule 6.508(D)(3) to procedurally bar Gordon's claims. *See e.g. Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

17

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In extraordinary cases where a constitutional error has probably resulted in the conviction of one who is actually innocent, however, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrie*r, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Gordon alleges that appellate counsel's ineffectiveness in failing to raise these claims during her appeal of right constitutes adequate cause to excuse his procedural default. But Gordon has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy....

18

> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754.  Moreover, "[A] brief that raises every colorable issue runs the risk of burying

good arguments - those that, in the words of the great advocate John W. Davis, 'go for the

jugular,' - in a verbal mound made up of strong and weak contentions." *Id.* at 753 (internal

citations omitted).  Strategic and tactical choices regarding which issues to pursue on

appeal are "properly left to the sound professional judgment of counsel." *United States v.*

*Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "Generally, only when ignored issues are clearly

stronger than those presented will the presumption of effective assistance of appellate

counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (internal

quotations omitted). Appellate counsel may deliver deficient performance and prejudice a

defendant by omitting a "dead-bang winner," an issue obvious from the trial record which

would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849,

870 (E.D. Mich. 2003) (internal citations omitted).

Gordon has failed to show that, by omitting the claims presented in her

post-conviction motion for relief from judgment, appellate counsel's performance fell outside

the wide range of professionally competent assistance.   Appellate counsel filed a

substantial, forty-four page  brief which raised three claims on direct appeal.  These three

claims still form Gordon's three lead issues.   Gordon has not shown that appellate

counsel's strategy in presenting such claims and not raising other claims was deficient or

unreasonable so as to amount to cause that would excuse any default. *See Grant v.*

*Rivers*, 920 F. Supp. 769, 782 (E.D. Mich. 1996).  Because Gordon has failed to show

cause, the Court need not address the issue of prejudice. *See Smith*, 477 U.S. at 533.

19

Additionally, Gordon has not established that a fundamental miscarriage of justice has occurred. The only conceivable basis for raising a claim of actual innocence is Gordon's claim that Stephanie Chandler, Scofield's girlfriend, must have received a deal from the prosecutor in exchange for her testimony. Gordon notes that Chandler essentially admitted on the stand to committing crimes by supplying Scofield with a firearm, but that she was never charged with any crime. Apart from failing to show how this evidence - even if true - would show that she is factually innocent, the claim is based entirely on speculation. No evidence has been proffered to show that the prosecutor offered Chandler consideration in exchange for her testimony. The Court hastens to add that Gordon's crime was captured on video tape, so there is little question of her factual guilt. Gordon had failed to demonstrate that a fundamental miscarriage of justice would result from a failure to review her defaulted claims.

## CERTIFICATE OF APPEALABILITY

A Petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A Petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's resolution of Gordon's claims, and thus it will not issue a COA. Nor should Gordon be granted leave to proceed on appeal in forma

20

pauperis. FED. R. APP. P. 24(a).

## CONCLUSION

For the reasons stated, the Court concludes that Gordon's habeas claims are without merit.

**WHEREFORE** it is hereby **ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court DECLINES to issue Gordon a certificate of appealability or an application for leave to appeal in forma pauperis.

**SO ORDERED**.

_____
s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge


Dated: December 23, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 23, 2011, by electronic and/or ordinary mail.

Carol Cohron
Case Manager